No. 13116

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

THE STATE OF MONTANA on the relation of
ROBERT R. ZIMMERMAN,

Relator,

-vs-

THE DISTRICT COURT OF THE FOURTH JUDICIAL
DISTRICT OF THE STATE OF MONTANA, in and
for the COUNTY OF MISSOULA, and the HONORABLE
EDWARD T. DUSSAULT and HONORABLE JACK L. GREEN,
DISTRICT JUDGES THEREOF,

Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Edward A. Cummings argued, Missoula, Montana

For Respondents:

Robert L. Deschamps III, County Attorney, argued,
Missoula, Montana

---

Submitted:  September 9, 1975

Decided: NOV - 6 1975

Filed: NOV - 6 1975

*Thomas J. Kearney*
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an application for a writ of supervisory control or other appropriate writ. Petitioner pled guilty to a charge of misusing grant monies awarded him to do research. Petitioner was sentenced by the federal court. He then petitioned the state district court to drop all state charges pending against him evolving out of what petitioner claims was the same transaction as defined by sections 95-1711 and 95-1703(1), R.C.M. 1947. The district court denied the motion and petitioner applied to this Court for a writ of supervisory control or other appropriate writ.

Between July 1, 1968, and July 1, 1973, petitioner Robert R. Zimmerman, a former professor at the University of Montana, was in charge of research under various grants deposited with the University of Montana for the purpose of conducting scientific research into the effects of malnutrition on monkeys.

Two basic grants were involved in petitioner's primate research: (1) A series of private grants made by the Nutrition Foundation Inc., and given to the University of Montana Foundation, Inc., a nonprofit corporation which is the contracting agent for research projects which are performed at the University of Montana. (2) A grant consisting of a series sponsored by the United States Department of Health, Education and Welfare, and which was also given to the University of Montana Foundation.

Monies received from these and other grants were physically co-mingled with other monies received by the U of M Foundation when placed in several banks in the Missoula area to form what is called a "local pool of funds". Charges made to grants administered by the U of M Foundation were paid out of the "local pool" by means of a check from the U of M drawn on the entire "pool".

A separate set of books was kept on each grant; purchases made against grant funds were charged by the researcher to the

specific grant account which was to pay for the purchase; the University would debit the specific grant account for the purchase; and, any monies left in a grant account at the termination of the grant project were returned to the grantor.

In January 1973 officials of the U of M were advised of some irregularities in the types of charges made against the grant accounts administered by petitioner. Petitioner was apprised of the situation and asked for an explanation.

Several days later they were contacted by counsel for petitioner and advised of the possibility there may have been mistakes in judgment as well as billing errors by vendors. It was arranged that petitioner would review the charges made to the grants in order to seek out the errors. At the conclusion of this review, counsel for petitioner presented a list of what he termed "disallowable purchases" and a letter explaining the list. A check in the amount of $11,762.92 was also presented to the University to reconcile the accounts. Disallowable purchases were found in both the federal HEW grant accounts and in the private Nutrition Foundation grant accounts.

An audit was conducted by the University's Internal Auditor. His audit revealed numerous apparently fraudulent charges against the grant account not listed in petitioner's list of disallowable purchases.

Subsequently, a joint investigation between the Federal Bureau of Investigation and the Missoula county attorney's office was conducted into the matter, and on December 13, 1973 petitioner was charged by information in state court with 36 counts of embezzlement under former section 94-1501, R.C.M. 1947. These counts covered charges against the private Nutrition Foundation grants for a period of time beginning on September 16, 1969, and ending December 29, 1972. On the same day, December 13, 1973, petitioner

was arraigned in federal district court on an indictment charging 16 counts of violating Section 1001, Title 18 U.S.C. The specific acts charged were that petitioner had submitted for payment out of the federal HEW grant monies certain invoices for items not legitimately associated with the grants. The federal counts covered charges against the HEW grants for a period from September 18, 1970, until October 20, 1972. The state charges were limited to monies misused from the private fund, whereas the federal charges dealt with monies from the HEW grant.

On August 12, 1974, petitioner pled guilty to one of the counts charged in the federal indictment. He was subsequently sentenced to 3 years' imprisonment, with all but 60 days suspended on the condition that he contribute 40 hours per month to public service.

After the federal sentencing, petitioner filed a motion to dismiss in state district court under the provisions of sections 95-1711 and 95-1703(1), R.C.M. 1947. Hearings were held on these motions, and were denied. Petitioner has now applied to this Court for an appropriate writ to review the district court's refusal to dismiss the information against him.

The issue before this Court is whether the district court erred in refusing to dismiss the information charging 36 counts of embezzlement under former section 94-1501, R.C.M. 1947, after petitioner pled guilty to the one federal indictment under section 1001, Title 18 U.S.C.

Petitioner argues that if his federal conviction was for an offense which arose from the same transaction as the offense for which the state now seeks to prosecute him, then the state prosecution is barred by section 95-1711, R.C.M. 1947.

The portion of 95-1711 which defines "same transaction" reads as follows:

"95-1711. Effect of former prosecution and multiple prosecutions. (1) Definition of terms.

"(a) The term 'same transaction' includes conduct consisting of:

"(i) a series of acts or omissions motivated by a purpose to accomplish a criminal objective, and necessary or incidental to the accomplishment of that objective; or

"(ii) a series of acts or omissions motivated by a common purpose or plan and which result in the repeated commission of the same offense or affect the same person or the same persons or the property thereof."

The operative portion of section 95-1711 which applies to this case is found in subsection (4)(a) which reads:

"(4) Former prosecution in another jurisdiction--when a bar. When conduct constitutes an offense within the concurrent jurisdiction of this state and of the United States or another state or of two courts of separate and/or concurrent jurisdiction in this state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this state under the following circumstances:

"(a) The first prosecution resulted in an acquittal or in a conviction * * * and the subsequent prosecution is based on an offense arising out of the same transaction."

In reviewing the above quoted statutes, this Court does not find that the charges in the indictment and the information were a series of acts or omissions motivated by a purpose to accomplish a criminal objective as defined in section 95-1711(a)(i). Each charge in the indictment and each charge in the information was a separate act by petitioner. Therefore, for this Court to find that the same transaction is involved in both the indictment and the information, we must turn to section 95-1711(a)(ii).

The property involved belongs to two different funds: the Nutrition Fund, Inc., and the grants from HEW. The fact that they were co-mingled is immaterial, for separate books were kept on each account and each item was specifically charged against the two different accounts and not charged at random. The accounts

- 5 -

affected were the private foundation and the federal government. Therefore, neither the same persons nor the same property are involved in the information which the petitioner seeks to dismiss as was involved in the indictment.

Nor do we find that the same offenses were charged in the state's information as were charged in the federal indictment.

In State v. McDonald, 158 Mont. 307, 310, 491 P.2d 711, this Court quoted Morey v. Commonwealth, 108 Mass. 433, 434, with approval in defining the term "same offense":

> "'" * * * A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." * * *'"

The question thus becomes whether an additional fact must be proven in the state's charge of embezzlement over and above the federal indictment charging the making of false statements. To establish the federal crime of making a false statement, there must only be shown that a false statement was made. In the case of petitioner, however, in order to establish the crime of embezzlement, there must be shown an unlawful appropriation of state funds for his own use. We find, therefore, that the charges brought in the information under section 94-1501 is a different offense than that offense to which petitioner pled guilty in federal court.

Finally, even had this Court found that the same transaction was involved in the information as was involved in the federal indictment, it must be noted there was not the requisite concurrent jurisdiction between the state and the federal government in the offenses charged by the state as required by section 95-1711(4). Petitioner argues that part of the offenses took place on a federal reservation, giving the federal government concurrent jurisdiction with the state in prosecuting the offenses charged in

the information.  There is, however, no evidence presented
to sustain that contention.

The petition for the writ is denied and this proceeding
is dismissed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 7 -

Mr. Justice Haswell and Mr. Justice Daly, dissenting.

We dissent. In our opinion the state prosecution is barred by section 95-1711(4)(a), R.C.M. 1947.

That statute provides in pertinent part:

"(4) Former prosecution in another jurisdiction-- when a bar. When conduct constitutes an offense within the concurrent jurisdiction of this state and of the United States * * * a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this state under the following circumstances:

"(a) The first prosecution resulted * * * in a conviction * * * and the subsequent prosecution is based on an offense arising out of the same transaction."

In section 95-1711(1)(a)(ii), the term "same transaction" is defined as conduct consisting of

"(ii) a series of acts * * * motivated by a common purpose or plan and which result in the repeated commission of the same offense or affect the same person * * *or the property thereof." (Emphasis added).

Here relator's conduct constituted an offense within the concurrent jurisdiction of Montana and the United States. His conduct consisted of obtaining research funds for his personal use by submitting false invoices and vouchers. This conduct constituted embezzlement under both state law (Section 94-1501,R.C.M. 1947) and federal law (18 U.S.C. §641). Hence, concurrent jurisdiction in state and federal courts. The fact that federal authorities chose to prosecute and convict him for making a false statement to secure the funds (18 U.S.C. §1001) rather than for appropriating the funds to his own use (embezzlement) does not destroy the required concurrent jurisdiction. The measure of concurrent jurisdiction under section 95-1711(4) is not the charges on which relator is ultimately pro- secuted in the two jurisdictions, but whether his conduct constitutes an offense subject to prosecution in both.

Likewise in our opinion, the state prosecution is based on offenses arising out of the same transaction as the federal con- viction and therefore barred. The prior federal conviction is based

on an offense arising out of the same facts, conduct and transaction as the state prosecution. All 36 charges in state court are based on a series of acts by relator (submitting false invoices and vouchers) motivated by a common purpose or plan (securing research funds for his personal use) resulting in the repeated commission of the same offense (embezzlement). His conduct also affected the same person or entity (the University of Montana) and its property (the "local pool" of its funds).

There is but one research project, one fund, a single purpose or plan, a series of the same acts, and the repeated commission of the same offense against the same institution. The initial source of the grants, the internal bookkeeping procedures of the University, and technical legal distinctions between the charges filed in the two courts cannot alter these basic facts. The statutory requirements of section 95-1711, R.C.M. 1947 are satisfied and the state prosecution barred, as we see it.

We would grant the writ and order dismissal of the Information in the district court of Missoula County.

_____
Frank I. Haswell

_____
Gene B Daly
Justices.

- 9 -