No. 80-340

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JAMES THOMAS RITCHSON,

Defendant and Appellant.

---

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade.
Honorable John McCarvel, Judge presiding.

Counsel of Record:

For Appellant:

Sandra K. Watts argued, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Chris Tweeten argued, Assistant Attorney General, Helena,
Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana

---

Submitted: June 11, 1981

Decided: JUL 2 - 1981

Filed: JUL 2 - 1981

*Thomas J. Kearney*

Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

James Thomas Ritchson was convicted of one count of aggravated assault and one count of robbery following a jury trial in the District Court of Cascade County. He was sentenced to concurrent terms of 20 years imprisonment on each count and was declared a dangerous offender. Ritchson appeals from the judgment of conviction. We affirm.

Ritchson robbed the Daily Double Bar in Great Falls in the early morning on December 17, 1979. He had been in the bar for several hours drinking and playing pool. At closing time, he pulled a sawed-off shotgun from underneath his jacket and shot in the direction of the bar behind which stood the bartender, Jim Heaney. The defendant demanded the money from the cash register. The owner of the bar instructed the bartender to give the man the money, whereupon the drawer of the cash register was placed on the bar. The defendant took most of the money and then proceeded to back out toward the front door. The swamper testified that when he heard the shot he left the bar through the front door, locking it behind him. The defendant therefore broke down the front door to make his exit. He was seen getting into a car with two other people and leaving. The investigating police officer found a glove in the street in the area where defendant entered the getaway car.

After further investigation, Ritchson was arrested at his home on December 21, 1979, without a warrant. At the time of arrest the officers saw in his house a jacket fitting a description given by the witnesses. The police returned with a search warrant and seized the jacket, in the pocket of which was found the matching glove.

The defendant was charged with aggravated assault, section 45-5-202 (1)(c), MCA, and felony robbery, section 45-5-401(1)(b), MCA. Notice of intent to rely on the defense of mental disease or defect was filed on January 11, 1980. The District Court

ordered that the defendant be transported to the Montana State Prison to undergo a 45-day psychiatric evaluation. The report apparently persuaded the defendant and his counsel to abandon the defense of mental illness.

Several times during the proceedings, defense counsel moved to dismiss the aggravated assault charge on the basis that aggravated assault is a lesser included offense of robbery under section 46-11-502, MCA. The defense also moved to require the State to elect specific elements of robbery under section 45-5-401(1)(b). Both motions were denied. At the conclusion of the evidence the defense moved to dismiss the charges against defendant due to the illegal arrest of defendant. This motion was also denied.

On appeal the defendant raised the following issues:

1) Whether section 46-11-502, MCA, prohibits the conviction of this defendant of both aggravated assault and robbery.

2) Whether the State must elect the specific elements of robbery, as defined in section 45-5-401(1)(b), which the State would attempt to prove.

3) Whether the District Court erred in prohibiting defense counsel from propounding questions to prospective jurors on their thoughts about severity of the sentence in this case.

4) Whether in light of the recent United States Supreme Court decision in Payton v. New York, there was an illegal arrest of the defendant.

5) Whether the defendant received a proper psychiatric examination pursuant to section 46-14-202, MCA.

The defendant first argues that aggravated assault is a lesser included offense of robbery and that it was error to impose sentences for both offenses. Section 46-11-502, MCA, provides in part:

> "When the same transaction may establish the commission of more than one offense, a person charged with such conduct may be prosecuted for

- 3 -

each such offense. He may not, however, be convicted of more than one offense if:

"1) one offense is included in the other. . ."

The term "included offense" is defined in section 46-11-501(2), MCA, as follows:

"(2) An offense is an 'included offense' when:

"(a) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

"(b) it consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

"(c) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission."

Defendant argues that the State relies upon the same act to establish the causing of reasonable apprehension of serious bodily injury, an element of aggravated assault, and the threat or fear of bodily injury, an element of robbery. The act of firing the shotgun in the direction of the bartender is the "same transaction" within the meaning of section 46-11-502, MCA, according to defendant. He argues that in this case robbery can be established by proving the elements of aggravated assault plus the added ingredient of occurrence in the course of committing a theft.

While this Court has not addressed the specific issue of whether aggravated assault is a lesser included offense within robbery, there are several recent opinions concerning the analysis to be followed in determining if an offense is included within another offense. State v. Close (1981), ____Mont.____, 623 P.2d 940, 38 St.Rep. 177; State v. Coleman (1979), ____Mont. ____, 605 P.2d 1000, 36 St.Rep. 1134; State v. Perry (1979), ____ Mont.____, 590 P.2d 1129, 36 St.Rep. 291; State v. Davis (1978), 176 Mont. 196, 577 P.2d 375; and State v. Radi (1978), 176 Mont. 451, 578 P.2d 1169. These cases consistently apply the test set forth in Blockburger v. United States (1932), 284 U.S. 299, 304,

- 4 -

52 S.Ct. 180, 182, 76 L.Ed.2d 306:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is <u>whether each provision requires proof of a fact which the other does not.</u>" (Emphasis added.)

In State v. Close, supra, it was stated that the <u>Blockburger</u> analysis must be applied with reference to the statutes defining each offense and not with reference to the facts of the individual case. See also Brown v. Ohio (1977), 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187, holding that the emphasis of the <u>Blockburger</u> test is on the elements of the two crimes.

The statute defining "included offense" speaks in terms of "the facts required to establish the commission of the offense charged." Section 46-11-501(2)(a), MCA. This language is a reference to the statutory elements of the crime rather than to the individual facts of each case.

The Arizona, California and Oregon cases relied upon by defendant are inapposite. Those states, either by statute or case law, have adopted an approach whereby the facts of the individual case rather than the statutory elements of the crimes determine whether multiple punishment is allowable. See State v. Steele (1978), 33 Or.App. 491, 577 P.2d 524; State v. Jorgenson (1972), 108 Ariz. 476, 502 P.2d 158; People v. Beamon (1973), 105 Cal.Rptr. 681, 8 Cal.3d 625, 504 P.2d 905. In those jurisdictions the test is to eliminate the facts in the individual case which are needed to prove one offense and then to determine if the remaining facts will prove the other offense. See State v. Mitchell (1970), 106 Ariz. 492, 478 P.2d 517. If such an approach were followed in this case, the act of firing the shotgun could be used to establish only one of the offenses. Montana has never used the factual approach, however, and such an approach is inconsistent with the statutory and case law of this state.

The ultimate goal is to determine whether the legislature intended to allow multiple punishment where the same act violates two statutes. Examination and interpretation of the relevant statutes alone will provide the answer to the multiple punishment question.

Aggravated assault is committed according to section 45-5-202, MCA, when a person

" . . . purposely or knowingly causes:

"(a)   serious bodily injury to another;

"(b)   bodily injury to another with a weapon;

"(c)   reasonable apprehension of serious bodily injury in another by use of a weapon; or

"(d)   bodily injury to a police officer."

The offense of robbery is defined by section 45-5-401, MCA, as follows:

"(1) A person commits the offense of robbery if in the course of committing a theft he:

"(a)   inflicts bodily injury upon another;

"(b)   threatens to inflict bodily injury upon any person or purposely or knowingly puts any person in fear of immediate bodily injury; or

"(c)   commits or threatens immediately to commit any felony other than theft."

In order to establish the offense of robbery, the State must prove that the injury or threat occurred in the course of committing a theft. In order to establish aggravated assault, the State must prove _serious_ bodily injury and/or the use of a weapon under subsections (a),(b) and (c). Subsection (d) requires proof of injury to a police officer. One can commit robbery without inflicting _serious_ bodily injury and without using a weapon. As noted in MONTCLIRC's Montana Criminal Code Annotated, pp. 182-184, one can commit robbery with a toy gun. A toy gun does not qualify as a "weapon," as defined in section 45-2-101(65), MCA, and as used in the aggravated assault statute. As the aggravated assault statute requires proof of at least one element

that is not needed to establish the offense of robbery, it is not a lesser included offense in the crime of robbery.

Two other jurisdictions have distinguished the offenses of aggravated assault and robbery on the basis that the former requires serious bodily injury while the latter requires mere bodily injury. State v. Stepney (1972), 280 N.C. 306, 185 S.E.2d 844 and People v. Newton (1978), 61 App.Div.2d 1051, 403 N.Y.S.2d 277.

We find that aggravated assault as defined by section 45-5-202, MCA, is not a lesser included offense of robbery as defined by section 45-5-401, MCA. Therefore the District Court did not err in imposing sentences for both offenses.

Defendant's second contention is that the District Court erred in failing to require the State to elect between the alternative means of committing robbery set forth in section 45-5-401(1)(b). The information and the jury instructions included both theories of subsection (b). Defendant argues that failure to elect deprives him of notice and due process because he has no way of knowing which set of elements and which proof will be required. Further defendant claims that only one of the alternatives requires the mental state "purposely or knowingly" and that therefore the State was allowed to prove the offense of robbery without proving intent.

Neither of defendant's arguments has any merit. It was established in State v. Klein (1976), 169 Mont. 350, 547 P.2d 75, that a conviction for the crime of robbery requires proof that the accused must have acted purposely or knowingly, regardless of which alternative element is proved. The jury instructions as a whole make the intent requirement clear, since Instruction No. 3 was given as follows:

> "To sustain the charge of Robbery, the State
> must prove that each element of the offense was
> done purposely or knowingly."

Any confusion caused by the wording of the statute which was

repeated in the jury instruction was cured by Instruction No. 3. Cf. State v. Dess (1969), 154 Mont. 231, 462 P.2d 186.

The information was sufficient to notify defendant of the charges brought against him. This Court specifically approved the practice of charging in the alternative within separate counts in State ex rel. McKenzie v. District Court (1974), 165 Mont. 54, 525 P.2d 1211. Section 46-11-404(1), MCA, explicitly states that a charge may contain different statements of the same offense, and further provides that the prosecution is not required to elect between the different offenses.

Defendant next contends that the District Court erred in refusing to allow his counsel during voir dire to inform the jurors of the penalty for robbery and then to inquire whether they felt the penalty was too severe. The court allowed counsel to inquire whether the jurors were aware of the penalty, and none of the jurors responded in the affirmative. Defendant complains that his rights under section 46-16-304(2)(i), MCA, were violated.

A similar argument was raised in State v. Hallam (1978), 175 Mont. 492, 575 P.2d 55, with regard to the prospective jurors' beliefs on capital punishment. Therein it was noted that a jury having conscientious opinions against the death penalty would not be more likely to convict defendant. Similarly, if any of the jurors in this case felt the penalty for robbery was too severe, this belief could only work to the benefit of defendant. The State might complain about the restriction of voir dire in this area, but the defendant cannot show that the restriction resulted in prejudice to him.

On April 15, 1980, prior to the trial in this case, the United States Supreme Court decided Payton v. New York (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639, wherein a warrantless, nonconsensual entry into a suspect's home to make a routine felony arrest was held violative of the Fourth Amendment

to the United States Constitution. Ritchson argues that his warrantless arrest at his home four days after the robbery violated his rights as enunciated in Payton, and that therefore the charges against him should have been dismissed.

The flaw in defendant's argument is that an illegal arrest has never been a bar to prosecution. The Court in Payton noted that the issue presented for decision was whether certain evidence seized as a result of or incident to the arrest was admissible, and not whether defendant must stand trial, because he must stand trial even if the arrest is illegal. Payton v. New York (1980), 445 U.S. at 592, 100 S.Ct. at 1383, 63 L.Ed.2d at ____, citing U.S. v. Crews (1980), 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537. Defendant concedes that the coat and glove seized from his home under the search warrant were properly admitted.

The defendant's last contention is that the psychiatric examination at the Montana State Prison did not conform to the requirements of section 46-14-202, MCA. Defense counsel bases her argument on an alleged statement by a member of the prison staff that the prison is not equipped to handle forensic psychiatric examinations and that they conduct merely diagnostic evaluations for placement purposes. No objection appears in the record to the court's order sending defndant to the prison for examination, and the allegations in defendant's brief are based upon hearsay records outside of the record. Error cannot be predicated on facts not appearing in the record. State v. Puzio (1979), ____Mont.____, 595 P.2d 1163, 36 St.Rep. 1004.

Affirmed.

_____
Chief Justice

We concur:

_____,

_____

_____

_____

Justices